UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDISON GABRIEL CEDENO-CEDENO; YAIR CHEME-IBARRA; and NORMAN EDU TORRES AGUINA,

Defendants.

Case No.: 14cr3305

**ORDER GRANTING IN PART, DENYING IN PART, AND RESERVING IN PART MOTIONS IN LIMINE**

Pending before the Court are Motions In Limine filed by both parties. On July 1, 2016, the Government filed Motions in Limine, which Defendants oppose. [ECF Nos. 146, 149.] Defendant Cheme-Ibarra filed Motions in Limine on July 5, 2016 and Defendant Cedeno-Cedeno filed Motions in Limine on July 6, 2016, to which all Defendants have joined. [ECF Nos. 147-148.] The Government filed a Response in Opposition to Defendants' Motions. [ECF No. 151-152.] On July 19, 2016, the Court held a Motion in Limine hearing in which it ruled on some requests and reserved others. For the reasons stated below, the Court Grants in Part, Denies in Part, and Reserves the following Motions in Limine.

//

I. Defendants' Motions in Limine

*A. Exclude co-defendant's post detention statements under Bruton*[1]

Defendants argue that the Court should suppress statements allegedly made by one of the co-defendants to Lt. Matthews because they are inculpatory and will be used to "show that the crew was not actually fishing, had no explanation regarding the absence of bait or ice, and that the unidentified person who answered Lt. Matthews questions lied about where the boat was heading." (Cedeno-Cedeno Motion In Limine at 5.) Defendants contend that these admissions can be used to implicate the other co-defendants in the conspiracy, but Lt. Matthews cannot identify the defendant who made the statements, therefore, there is no opportunity for cross-examination which violates the Defendants' Sixth Amendment right to confrontation.

In response, the Government argues that the statements do not need to be suppressed because only statements that are facially incriminating implicate a defendant's right to confrontation, and here the statements were not facially incriminating. (Government Opposition at 4 [ECF No. 152].) Moreover, the Government contends that the statements can be redacted to eliminate any *Bruton* problems, if any exist, citing *United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989). The Government seeks to admit statements made by one of the Defendants who said they were going home with no catch, but revisited his answer to say they were going to fish with another boat that was 100 to 200 miles away, "solely for the fact that one Defendant changed his story, indicating deception or consciousness of guilt" and not for the truth of the assertion that Defendants were fishing or going to meet another fishing boat. (*Id*. at 5.) Therefore, the statements do not violate the Confrontation Clause and are admissible.

---

[1] In *Bruton v. United States*, the Supreme Court found "Admission of codefendant's confession that implicated defendant at joint trial constituted prejudicial error even though trial court gave clear, concise and understandable instruction that confession could only be used against codefendant and must be disregarded with respect to defendant." 391 U.S. 123 (1968).

Under *Bruton*, 391 U.S. at 135-36, a "powerfully incriminating extrajudicial statement" made by a nontestifying codefendant deprives the defendant of his Sixth Amendment right of confrontation if it is introduced in a joint trial." In *Bruton*, codefendant Evans orally confessed that he and Bruton committed an armed robbery. 391 U.S. at 124. The confession was admitted against Evans, and the district court instructed the jury to consider the confession only as to defendant Evans, however the Supreme Court held that it was unreasonable to believe the "powerfully incriminating extrajudicial statements" of the codefendant could be "wiped from the brains of the jurors" simply by way of a limiting instruction. *Bruton*, 391 U.S. at 129, 135. The non-testifying codefendant's facially incriminating confession implicating defendant in the crime is inadmissible because the codefendant in essence becomes a witness against the defendant who cannot be cross examined. *Greene v Fisher*, 132 S.Ct138 (2011). If a statement is not powerfully incriminating on its face, but instead implicates a codefendant only when linked with other evidence, the statement does not fall within the ambit of *Bruton's* protective rule. *Richardson v. Marsh*, 481 U.S. 200, 208 (1987). Where such "contextual implication" is required to connect the statement to the defendant, limiting instructions can be effective. *Id*. ("while it may not always be simple for the members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of *Bruton* 's exception to the general rule.)

None of the statements made by the co-Defendants directly implicated any of the Defendants in the crime of transporting cocaine. Instead, the statements were factual accounts about the lack of fishing equipment, ice and catch onboard. These do not fall within the purvue of *Bruton* and its progeny because they were not facially incriminating statements but would require contextual implication to be inculpatory. *See Richardson*, 481 U.S. 200. Similarly, the statements made by one of the Defendants which initially indicated they were heading home without catching any fish, and then changed to state they were on their way to meet another fishing vessel are potentially incriminating only

when combined with other evidence, including the lack of fish onboard, rusty hooks, and a bundle of cocaine floating in the water tied with a green rope, similar to the one found on Defendants vessel. In light of the fact that these statements on their own are not powerfully incriminating confessions or inculpatory statements, the *Bruton* rule does not bar their introduction. *See United States v. Hoac*, 990 F.2d 1099, 1105 (9th Cir. 1993) ("this court has held that a codefendant's statement that does not incriminate the defendant unless linked with other evidence introduced at trial does not violate the defendant's Sixth Amendment rights.) For the foregoing reasons, the Court **DENIES** Defendant's request to exclude Defendants statements to Lt. Matthews.

*B. Exclude unMirandized statements*

Defendants contend that the custodial statements discussed above made by the defendants and the unidentified declarant must be suppressed because Defendants were not given *Miranda* warnings prior to the interrogation. (Mot. 7-8.) Defendants argue that the vessel was stopped by a use of force when it was fired upon by a military helicopter, and Coast Guard and Navy personnel drew their weapons when boarding the vessel. In addition, Lt. Matthews ordered Defendants to stay in the bow of the vessel without moving or talking during the boarding. They were detained for at least 5 hours before the questioning, according to Defendant. Therefore, Defendants argue the totality of the circumstances indicates they were in custody when Lt. Matthews asked them questions, triggering the *Miranda* requirement. (*Id*.) The Government counters that *Miranda* warnings are only required for custodial interrogation, and it is well established that routine questioning by Coast Guard is not the sort of situation that triggers the *Miranda* requirement. (Oppo. 5.)

Under *Miranda v Arizona*, 384 U.S. 436, 444 (1966), the government cannot use statements against a defendant that were made during a custodial interrogation unless warnings were given before the interrogation began, the defendant understood his rights under *Miranda* and voluntarily, knowingly and intelligently waived them. Custodial interrogation means questioning initiated by law enforcement after a person has been

taken into custody or otherwise deprived of his freedom of action in any significant way. *Id*. The test under *Thompson v Keohane*, 516 US 113 n 11 (1995) is whether the totality of circumstances demonstrates that the individuals were in custody when they were questioned. The Ninth Circuit has long held that "routine questioning by the Coast Guard or Customs officials is not the sort of custodial situation that normally triggers the Miranda requirement… [however, once Coast Guard] agents have probable cause to believe that the person they are questioning committed an offense, and that person reasonably believes that he is not free to leave, *Miranda* warnings should be administered." *United States v. Troise*, 796 F.2d 310, 314 (9th Cir 1986)

Here, Lt Matthews asked the Defendants routine boarding questions, including who they were and what they were doing. They told him they were fishing, but had no bait, no ice, no catch and changed their story about when they were heading back home. Defendants contend they were confined for many hours after being told to remain in the bow of the vessel while armed United States Navy and Coast Guard personnel searched the vessel and Defendants were told not to move, eat, or drink- conditions which appear to constitute confinement. However, routine stops, boarding and inspection of a vessel on the high seas does not normally constitute "custody". See *Troise*, 796 F.2d at 314; *United States v Rioseco*, 845 F.2d 299 (11th Cir. 1988), *United States v Li*, 206 F.3d 78, 83 (1st Cir. 2000). Moreover, Lt. Matthews and his crew gained control of the vessel at about 3:04 p.m., the bales were not discovered until the helicopter located them at 4:39 p.m., and the contents were not confirmed to be cocaine until 10:29 p.m. Therefore, the Coast Guard did not have probable cause to suspect that Defendants had committed an offense at the time of the questions, so they were not obligated to provide *Miranda* warnings. Accordingly, the Court **DENIES** Defendants request to exclude unMirandized statements.

*C. Exclude involuntary statements*

Defendants argue that the statements made by the Defendants were involuntary and therefore inadmissible under *Miller v Fenton*, 474 US 104, 116 (1985) because the

circumstances surrounding the interdiction created psychological coercion. Defendants claim the distressing conditions included being fired at by a helicopter while onboard the panga, having guns pointed at them by the boarding officers, being forced to sit in the boat with gasoline fumes surrounding them, and being provided no food or drink. Cedeno requests the statements be suppressed, or a hearing be held to determine if they were voluntary.

To determine whether evidence supplied by Defendant was involuntary courts ask whether, under the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004). The inquiry focuses on the conduct of law enforcement and the susceptibility of the defendants based on their age, length of detention and questioning tactics. *See United States v Schneckloth v Bustamonte* 412 US 1027, 1027 (9th Cir. 2003). Courts have found statements to be inadmissible when the physical and psychological techniques were coercive, as in *Crane v Kentucky*, 476 US 683 (1986) where an uneducated teenager was confined to a small cell for a long time period, surrounded by six officers during interrogation and was unable to contact his mother. While the conditions here were confining, and the presence of law enforcement was likely intimidating to Defendants, there is no evidence that Lt Matthews exerted the kind of coercion required to exclude statements. As such, there is no indication that the statements made by the defendants were not the product of a free will. Accordingly, the Court **DENIES** Defendants request to exclude the statements.

D. *Exclude testimony of Carlos Gongora*

Defendants seek to limit the introduction of incriminating statements allegedly made by Defendants to Carlos Gongora, a detainee who was held alongside the Defendants on the U.S.S. Vandegrift. Gongora will testify about the statements made by Defendants to him, his perceptions about what the Defendants were doing, information about drug smuggling operations, and his opinions about drug smugglers in this area of the world. Defendants first argue that Ninth Circuit precedent requires that the

statements be suppressed because they might never have made them to Gongora if they had been promptly presented to a magistrate judge, as required under Federal Rule of Criminal Procedure 5(a)(1)(B), or at least been provided with the chance to speak to an attorney who would have cautioned them against speaking to other detainees. (Govt's Mot. 28-29.) Next, Defendants argue that if Gongora is allowed to testify, his testimony should be limited to the alleged statements made by Defendants, and his commentary and opinion should be precluded. Finally, Defendants move to sever pursuant to *Bruton*, 391 U.S. at 123 claiming that Gongora relayed incriminating statements; (1) implicating all the defendants; (2) made by all three defendants implicating themselves; and (3) made by Torres implicating himself and indirectly implicating the other defendants. Should the Government oppose severance, Defendants contend the Court should preclude all of Gongora's testimony. (*Id*. 31.)

In response, the Government notes that this Court found no Rule 5 presentment delay in the sixteen day time-frame between apprehension and delivery of Defendants to the United States, and moreover, Defendants argument is based on pure speculation that if they had been presented earlier or counseled, they might not have had the conversations with Gongora. (Oppo. at 16-17.) Significantly, the Government contends that suppression is only a remedy for evidence obtained by government agents, but here, Gongora was not an agent of the Government, and in fact, was under arrest himself. (Id. 17.) The Government argues that Gongora's testimony should be evaluated under Federal Rules of Evidence 701 to determine whether his opinion testimony is based on his perception, is helpful, and not based on specialized knowledge. As to Defendants severance motion, the Government claims none of the statements it intends to introduce are "powerfully" or "facially" incriminating but must be tied to other evidence to gain inculpatory meaning, which removes them from the sphere of *Bruton's* subject matter. (*Id*. 18-19.) Additionally, the Government welcomes a limiting instruction stating that only statements of a defendant may be considered against that defendant. (*Id*. 18.)

As a preliminary matter, there was no Rule 5 presentment delay in this case, as determined by this Court. As a result, Defendants' arguments that they *may* not have engaged in conversation with Gongora had they been held for less time or consulted an attorney, are moot in addition to being merely speculative. However, the Court agrees that Gongora's testimony should only cover the statements allegedly made by the Defendants.[2] The Government states it will elicit the following statements from Gongora at trial:

> Defendant Cheme-Ibarra stated he was the "captain" of the crew. Cheme stated the crew had been dispatched from Tumaco, Columbia, by a man that [sic] goes by the name "Camillo." Cheme stated that, upon the crew's initial observation of the "United States Forces" aircraft, panic set in. Cheme stated that when he and the crew saw the aircraft, they immediately began to throw the "merch" overboard."
>
> Torres-Aguina stated he was a "motorman" and that he was "working" so that he could earn enough money for a down payment on a house for his wife.
>
> Cedeno-Cedeno stated he was earning money because he had a small fishing boat that he wanted to fix up and use in the future.

(Oppo. 18-19.)

"[A] defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant." *Richardson*, 481 U.S. at 207; see *Bruton*, 391 U.S. at 135–36, 88. In light of the Government's representations about the substance of Gongora's testimony, the Court does not perceive any *Bruton* issue requiring severance because none of

---

[2] It appears the Government does not intend to elicit any testimony from Gongora about drug smuggling operations in the area, or information about his own conviction, which is appropriate as there is considerable risk of prejudice in Gongora making statements about drug smuggling operations unrelated to Defendants. See Fed. Rule Ev. 403.

Defendants' proffered statements are facially incriminating, but instead, are only inculpatory when combined with other evidence. This type of "contextual implication" does not fall under the *Bruton* rule, rather, the statements must be "powerfully incriminating" on their own. *See Richardson*, 481 U.S. at 207. There is no *Bruton* issue where a confession is redacted to eliminate the defendants' name and any reference to his existence. *Sherlock*, 962 F.2d at 1361. While Defendants contend there is no way to sanitize the statements to avoid implicating the other Defendants because they were quite literally, in the same boat, the Court finds that the Government may produce redacted statements which remove any reference to the other crewmembers. (Mot. 31.) To the extent the Government seeks to introduce additional testimony, it should be evaluated through the lens of Federal Rules of Evidence Rule 701, to determine whether it is "rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." See FRE 701. Accordingly, the Court **DENIES** Defendant's motion to exclude Carlos Gongora's testimony.

II. Government Motions in Limine[3]

A. Jurisdiction

*i. Statutory Jurisdiction*

Initially, the Government argued that the Court could exercise statutory jurisdiction because the panga was a "vessel without nationality" as described under the Maritime

---

[3] The Government requests permission to introduce expert testimony regarding the ion scan technology used to swab the panga and determine the presence of cocaine on the vessel. (Gov't Mot. 19.) Defendants object, stating the technology is unreliable and notice was insufficient. (Def. Mot. 3-6.) A *Daubert* hearing is scheduled for August 19, 2016 to determine whether this technology will be admitted via expert testimony. Similarly, the Government plans to introduce testimony of "reverse- drift" to explain how the cocaine bales may have floated from the GPS site indicated by the GPS device found in the panga. (Gov't. Mot. 17-18.) Defendants challenge this evidence for a lack of notice and request a *Daubert* hearing to establish the expert's qualifications. (Def's Mot. 26-27.) The Court will hold a *Daubert* hearing during trial to evaluate the proposed testimony related to navigational drift.

Drug Law Enforcement Act (MDLEA), 46 U.S.C. §70502(d)(1) in light of the Columbian government's Response that it could neither confirm or deny its registry in that country. Defendants objected, arguing that the statelessness of a vessel is a fact which the government must prove to a jury beyond a reasonable doubt in the Ninth Circuit, under *United States v. Perlaza*, 439 F.3d 1149, 1166 (9th Cir. 2006).

During the July 19, 2016 Motion in Limine hearing, the Government conceded that in the Ninth Circuit, the issue of whether a vessel is stateless under the MDLEA is a question for the jury to determine. Accordingly, the Court finds the request to determine statutory jurisdiction prior to trial is **MOOT**.

*ii. Constitutional Jurisdiction*

The Government states that the MDLEA requires that a court determine it has both statutory and constitutional jurisdiction over the vessel and further, that constitutional jurisdiction requires a "sufficient nexus between the United States and the defendant's activities before exerting jurisdiction over foreign vessels," citing *United States v. Zakharov*, 468 F.3d 1171, 1177 (9th Cir. 2006). However, in cases where the vessel is found to be stateless, there is no requirement that the Government demonstrate nexus as noted in *Perlaza* and *United States v. Moreno- Morillo*, 334 F.3d 819, 827-28 (9th Cir. 2003). The Government argues that *Perlaza* dictates that the Court must first "submit the question of statelessness to the jury; once the jury finds that it is stateless, then the Court then has to confirm that finding and state that there is constitutional jurisdiction."

Defendants disagree and argue that binding precedent requires the Court determine constitutional jurisdiction before trial to determine whether a sufficient nexus exists between the criminal conduct and the United States to hale a defendant into court, citing *United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998) and *Moreno- Morillo*, 334 F.3d at 827-28. Defendants read *Perlaza* to allow them "two bites at the apple" of constitutional jurisdiction; once before trial, and once after the jury has decided the question of statelessness.

Constitutional jurisdiction requires that "the vessel involved in the alleged criminal conduct must be 'subject to the jurisdiction of the United States. . . [and] that to establish jurisdiction the government must prove nexus—that is, 'a connection between the criminal conduct and the United States sufficient to satisfy the United States' pursuit of its interests.'" *Klimavicius-Viloria*, 144 F.3d at 1257. It is undisputed that the Court must determine whether sufficient nexus exists, rather than the jury. *Moreno-Murillo*, 334 F.3d at 828. "The difficulty is compounded when one considers that, under Ninth Circuit law, the determination of statelessness is essential to and all but dispositive of the purely legal issue of personal jurisdiction, or "nexus," which is undeniably a pretrial determination: If a vessel is deemed stateless, there is no requirement that the government demonstrate a nexus between those on board and the United States before exercising jurisdiction over them." *Id*. 829.

*Perlaza* resolved the apparent conflict between the jury's determination of statelessness and the court's obligation to determine constitutional jurisdiction when it indicated that a court must allow the jury to determine whether a vessel is stateless prior to the Court analyzing whether a sufficient nexus exists to exert constitutional jurisdiction under the Fifth Amendment. The *Perlaza* Court stated that if the jury concluded that the panga "was Colombian, the district court will, consistent with the principles outlined in the following section [regarding constitutional jurisdiction], have to determine whether the Government established a sufficient nexus between the [panga] and the United States." 439 F.3d at 1167. Because the issue of statelessness must be determined by the jury, this Court would be premature in deciding whether constitutional jurisdiction exists before that determination is made, as indicated by the Court in *Perlaza.* Therefore, the Court **RESERVES** the determination of constitutional jurisdiction until the jury makes a determination regarding the statelessness of the vessel.

//

//

//

*iii. Admit email and forms from Columbian officials*

The United States requests admission of communications between the United States and Columbia including emails, the form sent by U.S. officials to Columbian officials requesting them to confirm registration of the panga in Columbia (Form 1), and the response of Columbian officials stating the panga's registration could not be confirmed or denied at that time (Columbia's Response). (Gov't Mot In Limine at 9.) The Government plans to authenticate the emails and documents through the testimony of a Coast Guard official who sent and received the documents under FRE 901(a). (Mot. 9.) During the July 19, 2016, hearing, the Court granted the Government's request to admit the emails and Form 1, provided the Form was redacted to exclude any prejudicial information, but reserved the Government's request to admit Columbia's Response. The Court now turns to this request.

The Government contends that Columbia's Response is admissible under multiple theories: 1) the Response is not hearsay but instead is a verbal act because it is being admitted to establish that Columbia *stated* the vessel's registry could not be confirmed or denied, but not to prove or disprove Columbian registry; 2) the Response is being admitted for the non-hearsay purpose to show Columbia's lack of confirmation of registry, and therefore is not a statement but is the absence of a statement; 3) the Response is being offered for its effect on the listener, because it caused the Coast Guard officials to treat the vessel as stateless and under the jurisdiction of the United States; 4) the Response can be deemed a public record as it clearly describes the "activities" of the Coast Guard and only includes information under a "duty to report." (*Id*. 11-13.)

*Verbal Act*

The relevant portion of the Response states that the "claimed flag….can neither be confirmed nor refuted at this time." (Gov't Mot. In Limine Exhibit 2 at 12.) The Government states that once Columbia issued this response, it "conferred on the USCG the ability to treat the vessel as stateless, with all the rights flowing from that designation" and as such, is not being offered to prove the vessel is not registered in

Columbia, but only to establish that the Columbian government responded as required under section 70502(d)(1) to confer jurisdiction to board the vessel. (*Id*. at 11.) The Government relies on the Ninth Circuit's holding in *United States v. Aikins*, 946 F.3d 608, 614 (9th Cir. 1990), an MDLEA case, where the admission of a Panamaniam official's grant of consent to board a vessel interdicted at sea was not hearsay but a verbal act.

Defendants counter that the Response is not a verbal act and is hearsay because it is relevant only insofar as it is true that the vessel could not be identified as Columbian by registry. (Def. Mot. In Limine 19.) The Government's reliance on *Aikins*, 946 F.2d 608, 614 (9th Cir 1990) is unavailing in Defendants' view, because the statement "we consent" to allow boarding has independent legal significance, whereas the statement that Columbian could neither confirm nor deny registry is simply an assertion that the party cannot locate registration records. (*Id*. 20.)

The Ninth Circuit has long recognized that "out-of-court statements that are offered as evidence of legally operative verbal conduct are not hearsay" but instead are considered "verbal acts." *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004). Legally operative statements are those that establish the rights and duties of parties. *United States v. Boulware*, 384 F.3d 794, 806 (9th Cir. 2004); see also Fed. R. Evid. 801, Advisory Committee Notes (a statement is not hearsay and instead is a "verbal act" where the statement itself affects the legal rights of the parties.) Under the MDLEA a vessel is subject to the jurisdiction of the United States if it is a "vessel without a nationality." 46 U.S.C. §70502(c)(1)(A). Included in that definition is "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality." §70502(d)(C). In order to confirm that a vessel is stateless: "the response of a foreign nation under paragraph (1)(A) or (C) . . . is proved conclusively by certification of the Secretary of State or the Secretary's designee." §70502(E)(2).

Pursuant to the MDLEA, the statement that a country can neither confirm nor deny registry is legally equivalent to a country confirming registry and allowing boarding of the vessel because in each case the agency receiving the information obtains jurisdiction under the statute to board the vessel. The statement is not offered for the truth as to whether the vessel is registered, but that the country issued the statement of non-registry, which accorded certain legal rights to the boarding officers. *See generally*, 46 USC 70503(c)(1). Accordingly, the statement that Columbian registration "can neither be confirmed nor refuted at this time" carried with it the legally operative force of the statutory provision in the MDLEA which authorized the Coast Guard to board the vessel and was a verbal act.

The verbal act quality of the Response leads Defendants to argue that section 70502(d)(2) of the MDLEA is unconstitutional because it improperly relieves the government of its burden of proving statelessness beyond a reasonable doubt by allowing documents to provide conclusive proof of jurisdiction. Because the Ninth Circuit requires a jury to determine statelessness, it elevated this issue to a question that must be proved beyond a reasonable doubt and is subject to higher requirement under the Due Process Clause of the Fifth Amendment. According to Defendants, the MDLEA runs afoul of the Supreme Court's holdings in *Sandstrom* and *Francis* [4] which determined that a conclusive or mandatory presumption in criminal prosecutions conflicts with the presumption of innocence because it shifts the burden of proof from the government to the defense. (Def. Mot. In Limine 22.) Defendants contend that the conclusive presumption that a vessel is stateless based on documentation creates a mandatory presumption that if the State proves certain predicate facts via these documents, the jury must infer the presumed fact of jurisdiction, however, statelessness is an "essential fact" that the government must prove to the jury beyond a reasonable doubt.

---

[4] *Sandstorm v. Montana*, 442 U.S. 510 (1979); *Francis v. Franklin*, 471 U.S. 307 (1985).

As a primary matter, *Sandstrom* and *Francis* are distinguishable from the case at bar because in those cases the court found that a jury instruction concerning an *element* of the crime charged created a mandatory presumption. If the jury found certain facts to be true, it had no choice but to find the element proven in violation of the Due Process Clause. In contrast, the crimes with which Defendants are charged do not include jurisdiction as an essential *element*. Instead, "this case presents one of the 'limited circumstances' in which 'facts not formally identified as elements of the offense charged' must be submitted to the jury and proved beyond a reasonable doubt." *Perlaza*, 439 F.3d 1149, 1166. The Court holds that the MDLEA does not violate Defendants' due process rights under the Fifth Amendment because jurisdiction is not an element of the charged offense and therefore, the requirement that the jury find statutory jurisdiction based on Columbia's Response does not create a mandatory presumption which shifts the burden of proof from the Government.

*Public Records Exception*

Even if the Court found that the document was hearsay, the document is admissible because it falls under the public records exception. A document falls under this exception to the rule against hearsay if it is "a record or statement of a public office [and]. . . (A) it sets out:(i) the office's activities; (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law enforcement personnel… and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8). The Action Request sent by the United States Coast Guard to Columbia is a standard form which effectuates the operations of District 11 regarding vessels suspected of illicit trafficking, and similarly, Columbia's Response is a standard form requiring Columbia to indicate whether the vessel was registered in that country. (Govt's Mot. In Limine Exhibit 2.) The documents clearly state their official purposes, the identity of the officer who completed them, and the conduct to be taken upon receipt of the information. Because the documents are routine military procedures, their reliability and trustworthiness are

evident. As such, the documents fall under the public records exception to the hearsay rule and are admissible.

*Effect on Listener*

Additionally, Columbia's Response is not hearsay, but instead is being offered for the "effect on the listener" because it caused the Coast Guard officials to proceed with boarding the vessel and asserting jurisdiction. (Govt's Mot In Limine 12-13.) Defendants argues that the effect on the Coast Guard officials to Columbia's Response was "entirely irrelevant to the facts at issue in this case" contending that the issue was not whether the Coast Guard believed it had jurisdiction to board the vessel, but whether it actually had jurisdiction. (Def. Mot. In Limine. 25.)

Out-of-court statements introduced to show the effect on the listener are not hearsay. *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991); *See also United States v Connelly*, 395 Fed.App'x 407, 408 (9th Cir. 2010)(unpublished)("[b]ank and credit card fraud victim's statement regarding a warning she received from a local banker that a large check had been drawn in her name was not hearsay, where it was not offered for its truth; rather, it was offered to show the effect on the listener, victim, and explain why she went to the bank to investigate."). Here, Lt. Matthews awaited word from District 11 before boarding Defendants panga, and when he received the information that Columbia could neither confirm nor deny the panga's registration to that country, he took action and boarded the vessel. Just as in *Connelly*, Lt. Matthews actions were dependent on the notice received regarding Columbia's inability to confirm registry of the panga.

For the reasons detailed above, the Court **GRANTS** the Government's request to admit Columbia's Response.

*iv. Admit expert testimony*

a. The Government intends to call DEA forensic chemist Michael Brousseau to testify about his findings that the drugs were 519.8 kilos of cocaine. Defendant does not object to this testimony. The Court **GRANTS** the Government's request, providing the expert is qualified and lays a proper foundation.

b. The Government intends to call a Drug Enforcement Agency (DEA) Special Agent to testify about the wholesale values of cocaine in and around Columbia, Mexico, Guatemala and San Diego, California on or around October 2014 to infer circumstantially that the defendants knew of the drugs onboard. Defendants object to the introduction of drug value in the United States and drug trafficking patterns that terminate in the United States under Federal Rules of Evidence 403 as more prejudicial than probative.

The Court **GRANTS** the Government's request to introduce the wholesale drug value in Mexico, Columbia and Ecuador but not street value in United States, provided agent's qualifications are sufficient and proper foundation is established.

c. The Government intends to call a DEA Special Agent regarding modus operandi as an expert on maritime drug trafficking in the Eastern Pacific Ocean who will testify that cocaine originates from Columbia and Peru, is often transported by panga crew members to Mexico or Guatemala where they are brought on land and transported to the United States. (Govt's Mot. In Limine 16-17.) The expert will testify as to the price panga operators are paid, and that the United States is the largest consumer of cocaine in the world, arguing that evidence of the cocaine's value is admissible as circumstantial evidence of Defendants' knowing participation in the drug trafficking scheme. (Gov't Oppo. 8.) The Government contends this type of expert testimony establishes modus operandi, knowledge and intent to distribute in complex cases such as these and is allowable under *Klimavicius- Viloria*, 144 F.3d at 1265. (*Id*.) The Government acknowledges that generally evidence regarding drug trafficking organizations is prohibited where it is not relevant, however, the Ninth Circuit has not established a per se rule that such evidence is inadmissible, rather, the evidence must be probative and relevant, citing *United States v. Sepulveda-Barraza*, 645 F.3d 1066, 1070-71 (9th Cir. 2011); *United States v. Vallejo*, 237 F.3d 1008, 1015-17 (9th Cir. 2001) (amended 246 F.3d 863 (9th Cir. 2001).

Defendants contend that the Government's request should be denied because notice was insufficient, the proposed evidence is inadmissible "structure" evidence and

evidence of cocaine consumption in the United States is irrelevant and unfairly prejudicial. (Def. Mot. In Limine 14.)

Defendants are correct in stating that generally evidence regarding drug trafficking operations constitutes "structure" evidence which is prohibited under *Vallejo*, 237 F.3d at 1015-1017. However, where conspiracy is alleged in a maritime drug trafficking case as it is here, the Ninth Circuit has considered the complex nature of drug operations, and allowed expert testimony to assist the jurors in their duties. In *Klimavicius-Viloria,* the court allowed drug courier profile evidence, despite it potentially being extremely prejudicial, in light of the "exceptional [and] complex" nature of the case finding the DEA specialist's testimony "necessary to inform the jury of the techniques employed by drug dealers in their illegal trade, techniques with which an ordinary juror would most probably be unfamiliar." 144 F.3d at 1259-60. The Court admitted detailed testimony regarding the complexity of maritime smuggling operations which outlined multiple smuggling routes over air, land and sea, the process by which mother ships, often disguised as fishing vessels, take "circuitous routes to their destinations to avoid detection," and how the organizations are compartmentalized . . . so that each group has limited knowledge of the operation. *Id*.

The proposed evidence about drug trafficking in the Eastern Pacific is sufficiently relevant and probative to the determination of Defendants purpose in occupying a panga fishing boat in the high seas off the coast of Panama and their departure from Columbia to outweigh any danger of prejudice. Unlike *Vallejo,* which involved a drug courier at a land port of entry and did not include a conspiracy charge, the facts of the present case could likely confuse a jury that was not provided the relevant factual scenario upon which to evaluate the facts. Accordingly, the Government's request to admit expert testimony of drug trafficking is **GRANTED**. However, the testimony about United States cocaine consumption being the highest in the world is more prejudicial than probative under Federal Rules of Evidence 403 and is **DENIED**.

//

d. The Government initially stated it intended to call FBI forensic examiner Candie Shegogue to testify as to her analysis of the cordage found on the drugs/GPS beacon seized from the ocean and the cordage found on defendants vessel, however, the Government has now withdrawn its request to call a cordage expert, therefore, the Court **DENIES** the motion as **MOOT**.

e. Similarly, the Government stated it intended to call a United States Coast Guard official to discuss maritime boarding rights and communications with foreign nations regarding jurisdiction, but the Government has since stated it no longer intends to call such a witness. Therefore, the Court **DENIES** the request as **MOOT**.

*v. Admit Helicopter video*

The Government intends to admit the United States Coast Gueard helicopter video recordings of the panga fleeing from Coast Guard officials and of finding the narcotics bales in the ocean. A Coast Guard official will lay the foundation under FRE 901(b)(1). Defendant does not object to this evidence. The Court **GRANTS** the request to admit the helicopter video recordings.

## III. CONCLUSION

In light of the above, the Court hereby:

(1) **DENIES** Defendants' request to exclude post-detention statements under *Bruton;*

(2) **DENIES** Defendants' request to exclude un-Mirandized statements;

(3) **DENIES** Defendants' request to exclude involuntary statements;

(4) **DENIES** Defendants' request to exclude testimony of Carlos Gongora;

(5) **DENIES** Government's request to determine statutory jurisdiction as moot;

(6) **RESERVES** determination of Constitutional jurisdiction until jury makes statutory jurisdiction determination;

(7) **GRANTS** Government's request to admit emails and Form 1 from the Columbian government, **DENIES** Defendants request to exclude the emails and Form 1;

(8) **GRANTS** Government's request to admit Columbia's Response

(9) **GRANTS** Government's request to admit DEA forensic chemist Michael Brousseau's testimony;

(10) **GRANTS** Government's request to introduce wholesale value of drugs in Mexico, Guatamala, and Ecuador;

(11) **GRANTS** Government's request to admit expert testimony regarding maritime drug trafficking in the Eastern Pacific Ocean;

(12) **DENIES** Government's request to admit evidence that United States is the largest cocaine consumer in the world;

(13) **DENIES** Government's request to admit cordage expert testimony as moot;

(14) **DENIES** Government's request to admit U.S. Coast Guard expert regarding jurisdiction and boarding rights as moot;

(15) **GRANTS** Government's request to admit helicopter video recordings.

IT IS SO ORDERED

Dated: August 17, 2016

Hon. M. James Lorenz
United States District Judge